UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 10-44-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHARLES FORD, | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

After swearing to tell the truth, the whole truth, and nothing but the truth, Charles Ford pled guilty to possessing a shank in a federal penitentiary. He now wants to take his guilty plea back. Because Ford has not demonstrated a "fair and just reason" for allowing him to do so, his motion to withdraw his plea is denied. Fed. R. Crim. P. 11(d)(2)(B).

## BACKGROUND

A one-count indictment charged Ford with possessing a prohibited object—namely, a homemade knife, or "shank"—while an inmate in a federal penitentiary, in violation of 18 U.S.C. § 1791(a)(2). R. 1. The Court set a trial date of February 22, 2011. On that day, Ford and his appointed counsel, Richard Hughes, appeared at the United States Courthouse in Ashland, Kentucky. Before jury selection, the United States orally moved to exclude a witness—an inmate by the name of Guffey—who Ford intended to call in order to establish a necessity defense. According to Ford, Guffey gave him the shank and threatened to kill him if he did not deliver it to another inmate. Transcript of February 22 Hearing ("Tr.") at 6. The Court granted the United States' motion to exclude Guffey's testimony because Ford did

not establish that he exhausted all legal alternatives, including informing the prison guards of Guffey's threat, before violating federal law by possessing the shank. Therefore, he was barred from mounting a necessity defense. Tr. at 9-16; *see United States v. Sahakian*, 453 F.3d 905, 910-11 (7th Cir. 2006).

After this ruling, Ford conferred with his attorney in private for about fifteen minutes. He then returned to the courtroom and indicated that he wished to plead guilty. Tr. at 18. Ford was then placed under oath, Tr. at 19, and the Court conducted a lengthy plea colloquy. Ford confirmed that he was of sound mind—he had not taken any drugs, medications, or other mind-altering substances within the previous twenty-four hours. Tr. at 21-22. He stated that he had discussed the charge against him, and the maximum possible penalty, with his attorney. Tr. at 19-20. When asked if he was satisfied with his attorney's advice and representation, Ford said, "Yes, sir." Tr. at 23. Ford confirmed that no one had pressured him or induced him to plead guilty, and that it was his own "free and voluntary" decision. Tr. at 30-31. Ford then confirmed the accuracy of the essential facts underlying the offense—that, on August 2, 2010, while an inmate in a federal penitentiary, he possessed a homemade knife or "shank." Tr. at 33. After all of this, Ford stated, clearly and unequivocally, that he wished to plead guilty. Tr. at 33. Satisfied that Ford was competent and that he understood the charge against him, the Court accepted his guilty plea. Tr. at 33-34.

Eighty days later, on May 13, 2011, Ford filed a pro se motion to withdraw his guilty plea. R. 33. The Court denied that motion without prejudice, advising Ford that he must file all motions through his appointed counsel, who at that time was Patrick Nash. R. 34. On

June 16, 2011, Ford re-filed the motion through Mr. Nash. R. 37. He also filed a motion to proceed pro se, R. 39, which the Court granted during a hearing on July 14, 2011. The Court then heard argument from Ford on his motion to withdraw his guilty plea. The Court orally denied his motion, promising a written opinion. This opinion fulfills that promise.

## DISCUSSION

Pleading guilty to a federal offense is a "serious act." *United States v. Hyde*, 520 U.S. 670, 677 (1997). Although a defendant has an absolute right to withdraw a guilty plea before the court accepts it, Fed. R. Crim. P. 11(d)(1); *United States v. Mendez-Santana*, --- F.3d ----, No. 09-2073, 2011 WL 1901545, at *4 (6th Cir. May 20, 2011), after the court accepts the plea, the calculus changes. A defendant who, under oath and in open court, acknowledges that he committed a crime should not be able to recant willy-nilly. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). To the contrary, the Sixth Circuit has cautioned that, once a defendant admits his guilt in open court, "the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)). That is because the "withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *Id.* (quoting *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993)).

Nevertheless, there are some rare situations where a defendant should be allowed to take back his guilty plea. Rule 11(d)(2)(B) allows a defendant to withdraw a guilty plea after the court accepts it but before it imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal." The purpose of this rule "is to allow a hastily entered

plea made with unsure heart and confused mind to be undone." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). The rule does not, however, exist to give the defendant a do-over—to allow him to plead guilty as a "tactical decision," wait for several weeks (or months), and then withdraw the plea if he feels he made a bad choice. *Id.* (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).

The Sixth Circuit has enunciated seven factors that should guide a court's decision on a defendant's motion to withdraw his guilty plea. Those factors are:

(1) The amount of time that elapsed between the plea and the motion to withdraw it;

(2) The presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

(3) Whether the defendant has asserted or maintained his innocence;

(4) The circumstances underlying the entry of the guilty plea;

(5) The defendant's nature and background;

(6) The degree to which the defendant has had prior experience with the criminal justice system; and

(7) Potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting *United States v. Bashara*, 27 F.3d 1174, 1182 (6th Cir. 1991)). These factors, in conjunction with the "strong presumption" that Ford's guilty plea—which he made in open court and under oath—is "final and binding," *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992), recommend denial of his motion to withdraw his plea.

**Factors One and Two—amount of time that elapsed between the plea and the motion to withdraw and the presence or absence of a valid reason for the delay**. Eighty days elapsed between Ford's guilty plea on February 22, 2011, and his initial pro se motion to withdraw the plea, filed on May 13, 2011. The length of this delay weighs against allowing withdrawal. If a defendant turns around and files a motion to withdraw a guilty plea a few days or weeks after the court accepts it, it is more likely that the plea was a hasty mistake—the kind of mistake that Rule 11(d)(2)(B) allows to be corrected. *See Alexander*, 948 F.2d at 1004. If, on the other hand, weeks or months go by before the defendant files his motion to withdraw, the requested withdrawal looks more and more like a "tactical decision," which Rule 11(d)(2)(B) does not condone. *See id.* For this reason, "courts have denied motions to vacate entered after *any substantial time* has passed after the entry of the plea." *Id.* (emphasis added). The Sixth Circuit has held that a delay of a similar length to that present in this case was "excessive," *United States v. Cinnamon*, 112 F. App'x 415, 418-19 (6th Cir. 2004) (90 days), and has held that even shorter delays were too long, *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67 days); *United States v. Goldberg*, 862 F.2d 101, 104 (55 days). Thus, the eighty-day delay in this case weighs against granting the motion to withdraw.

The only reason that Ford has offered for the delay is that his attorney told him to wait to file the motion until after he had a chance to discuss it with him. This explanation rings hollow because Ford obviously felt no compunction about filing motions on his own—his first motion to withdraw his guilty plea was pro se, R. 33, and he is now representing himself in this case. But even if the Court accepted that Ford would have filed his motion to

withdraw earlier but for his attorney's advice to wait, the remainder of the factors still weigh against allowing withdrawal.

**Factor Three—whether the defendant has asserted or maintained his innocence.** Ford has never asserted his innocence, other than initially entering a plea of not guilty at the arraignment on December 6, 2010. R. 5. To the contrary, he explicitly acknowledged his guilt during the plea colloquy. Tr. at 32-33. And during the hearing on his motion to withdraw, Ford never asserted that he was innocent of the crime charged.

**Factor Four—circumstances underlying the entry of the guilty plea.** In his written motion and during the hearing, Ford advanced three principal arguments to demonstrate that his plea was not knowing and voluntary. All three lack merit.

First, Ford complains that his attorney never explained the nature of the charge against him. As Ford articulates it, this argument is not that he did not understand the legal elements of the offense and the basic facts underlying it. During the plea colloquy, Ford clearly stated that he understood those things. Tr. at 32-33. Rather, Ford says that he did not understand the jurisdictional authority of the statute under which he has been charged— Congress's jurisdiction to enact it, the United States' jurisdiction to enforce it, and this Court's jurisdiction to adjudicate a violation of it.

This argument is utterly meritless. Congress's authority to enact the criminal statute under which Ford was charged, 18 U.S.C. § 1791(a)(2), is absolutely clear. The United States Constitution provides that "Congress shall have Power to . . . make all needful Rules and Regulations respecting the Territory or Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. This provision gives Congress power over federal property that is

virtually "without limitations." *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976). U.S.P.-Big Sandy is located on federal property. Therefore, Congress has plenary power to enact statutes governing the penitentiary, including § 1791. The United States, acting on behalf of the President, has a constitutional obligation to "take care that the laws"—including § 1791—"be faithfully executed." U.S. const. art. II, § 3. And this Court has the authority to exercise "[t]he judicial power of the United States," which extends to all cases "arising under . . . the laws of the United States," including § 1791. U.S. const. art. III, § 2, cl. 1. Therefore, the jurisdiction of all three branches of government involved in this case—of Congress to define the crime, of the President to prosecute the crime, and of this Court to adjudicate the crime—is unassailable. Even if Ford's lawyer did not fully explain this jurisdictional basis to him, that failure was immaterial because any jurisdictional challenge that Ford might have mounted would have undoubtedly failed.

Second, Ford argues that he requested a bench trial, and was surprised when he arrived in Court and learned that the United States was requesting a jury trial. He also faults his lawyer for not adequately communicating his request for a bench trial to the Court. Again, even assuming that this is true, Ford suffered no prejudice. Although a defendant has a constitutional right to demand trial by jury in felony criminal cases, there is no such right to demand a bench trial. Both the defendant and the government must consent to a bench trial. Fed. R. Crim. P. 23(a). The government did not consent in this case, so even if Ford's lawyer had communicated his request to the Court in a more timely manner, it would not have made a difference.

Finally, Ford claims that his lawyer had not subpoenaed a witness who was critical to his defense. According to Ford, this witness—who was also an inmate at U.S.P.-Big Sandy—would have testified that he threatened to kill Ford if he did not take the shank and deliver it to another inmate. But the reason that this witness was not present was Ford's own fault. Ford told his lawyer that the inmate's name was Jamal Duffey, Tr. at 2; his name was actually Jamal Guffey, Tr. at 6. Ford's attorney tried to locate the witness using the incorrect name that Ford provided, but was (not surprisingly) unsuccessful. Tr. at 2. And, at any rate, the Court ruled that Mr. Guffey's proposed testimony was not admissible to establish a necessity defense because Ford had not exhausted all legal alternatives to possessing the shank, including reporting Guffey's threat to the prison guards. Tr. at 9-16; *see United States v. Shakian*, 453 F.3d 905, 910-11 (7th Cir. 2006). Therefore, Guffey's absence from the trial did not prejudice Ford.

In sum, Ford has not presented any valid reason that would justify questioning the knowing and voluntary nature of his decision to plead guilty. Ford simply decided to plead guilty after the Court ruled against him on some preliminary motions. That is common in criminal cases, and does not justify withdrawal of his guilty plea.

**Factors Five and Six—the defendant's nature and background and his prior experience with the criminal justice system.** Ford is twenty-eight years old. Although he reportedly suffered from some learning disabilities as a child and does not yet have his G.E.D., Ford appears to be a thoughtful and intelligent person. After the Court granted his motion to proceed pro se, Ford presented arguments to the Court in a clear manner and was able to engage in a dialogue about legal issues. There is nothing to indicate that Ford

suffered any intellectual disability or other condition that would have impaired the knowing and intelligent nature of his plea.

Ford also has significant prior experience with the criminal justice system. As his pre-sentence report summarizes, he has twice been convicted of felony burglary and theft (including the nine-year-and-eleven-month sentence that he is currently serving), and he has also faced numerous misdemeanor charges. PSR ¶¶ 22-32. His criminal history falls in category V—the second highest level. Ford was not just some neophyte sucked into the vortex of the criminal justice system for the first time. To the contrary, he had "sufficient contact with the criminal justice system to fully understand his rights and the process." *United States v. Goddard*, 638 F.3d 490, 496 (6th Cir. 2011).

**Factor Seven—prejudice to the government**. There is always prejudice to the government when a defendant is allowed to withdraw his guilty plea. The government was prepared to proceed with the trial in his case on February 22. Restarting the process would require the government to expend substantial resources—to bring counsel for the United States back up to speed and to ready necessary witnesses and evidence. Although the government has not specifically identified any additional prejudice that it would suffer, it is not the government's burden to do so. The government is only required to specifically identify potential prejudice if the defendant successfully establishes a "fair and just reason for allowing the withdrawal." *United States v. Benton*, 639 F.3d 723, 729 (6th Cir. 2011). For the reasons explained above, Ford has not done so.

## CONCLUSION

For these reasons, it is **ORDERED** that Ford's motion to withdraw his guilty plea, R. 37, is **DENIED**. The Clerk shall direct that this order be sent to both Mr. Ford and his stand-by counsel.

This the 18th day of July, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge